**Gawthrop Greenwood, P.C.**
*Attorneys for Plaintiff Ray Bartoszek*
Stephen R. McDonnell
        NJ ID: 035991994
        smcdonnell@gawthrop.com
Jeremy Grivensky
        NJ ID: 444602023
        jgrivensky@gawthrop.com
17 East Gay Street, Suite 100
West Chester, PA 19381-0562
(610) 696-8225

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Ray Bartoszek**<br>                  Plaintiff,<br><br>   v.<br><br>**LifeBrand, Inc.**<br>   &<br>**Thomas J. Colaiezzi**<br>   &<br>**Gregory J. Hill**<br>   &<br>**Kristen Celia**,<br>                  Defendants. | **PLAINTIFF RAY BARTOSZEK'S COMPLAINT**<br><br>No. 1:24-cv-5273 |

Plaintiff Ray Bartoszek hereby complains of Defendants LifeBrand, Inc., Thomas J. Colaiezzi, Gregory J. Hill, and Kristen Celia, and in support alleges as follows:

### I.    PARTIES

1.    Plaintiff Ray Bartoszek is an individual with an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut.

1

2. Defendant LifeBrand, Inc. is a Delaware corporation registered at 251 Little Falls Drive, Wilmington, Delaware, with a principal place of business at 20-22 North Church Street, West Chester, Pennsylvania.

3. Defendant Thomas J. Colaiezzi is LifeBrand's founder, Chief Executive Officer, and Board of Directors Chairman who resides at 45 Sawmill Court, West Chester, Pennsylvania.

4. Defendant Gregory J. Hill is a member of LifeBrand's Board of Directors, who resides at 121 Iron Works Way, Wayne, Pennsylvania.

5. Defendant Kristen Celia is Colaiezzi's wife, who also resides at 45 Sawmill Court, West Chester, Pennsylvania.

## II. FACTUAL ALLEGATIONS

### A. LifeBrand and Colaiezzi Sign the Original Note and Original Guaranty

6. On October 19, 2023, Bartoszek and LifeBrand executed a Short Term Bridge Promissory Note (the "Original Note"), attached as **Exhibit A** and incorporated by reference.

7. Under the Original Note, Bartoszek loaned LifeBrand a principal amount of $500,000.00, with maturity dates of November 3, 2023, and November 17, 2023.

8. LifeBrand was to repay the full $500,000.00 principal, plus interest, before maturity.[1]

9. Simultaneous with the Original Note, Bartoszek and Colaiezzi executed a Guaranty Agreement (the "Original Guaranty"), attached as **Exhibit B** and incorporated by reference.

---

[1] If LifeBrand repaid Bartoszek on or before November 3, the total amount due from LifeBrand to Bartoszek was $565,000.00. If LifeBrand repaid Bartoszek after November 3, but on or before or November 17, the total amount due from LifeBrand to Bartoszek was $575,000.00.

10. Under the Original Guaranty, Colaiezzi "guarantee[d] the full and prompt payment when due of all payments and liabilities" payable from LifeBrand to Bartoszek under the Original Note.[2]

11. Colaiezzi also "pledge[d] his personally owned real property located at 60 Arkansas Avenue, Ocean City, NJ as collateral."[3]

**B. LifeBrand and Colaiezzi Default on the Original Note and Original Guaranty**

12. Neither LifeBrand nor Colaiezzi made any payment to Bartoszek under the Original Note or Original Guaranty before maturity.

13. Colaiezzi paid Bartoszek $80,000.00 on December 7, 2023.

14. Following demand for full payment, Colaiezzi drafted and sent Bartoszek a letter titled Confirmation of Promise of Repayment and Amendment of Personal Guarantee for Penalty, dated December 15, 2023 (the "Letter Agreement"), attached as **Exhibit C** and incorporated by reference.

15. In the Letter Agreement, Colaiezzi admitted his and LifeBrand's debt to Bartoszek was due and owing, and acknowledged the $80,000.00 paid to Bartoszek on December 7 reflected $75,000.00 in interest, plus a $5,000.00 late fee.

16. Under the Letter Agreement, Bartoszek granted LifeBrand an extension to repay the $500,000.00 in principal by December 22, 2023.

---

[2] Exhibit B, preamble.
[3] Exhibit B, ¶ 4.

17.    In exchange for the extension, Colaiezzi agreed "to be personally responsible to pay you a penalty of $5,000.00 per day for every day after December 22, 2023 that you have not been repaid the principal (in full)."[4]

18.    However, neither Colaiezzi nor LifeBrand made any principal payment under the Original Note or Original Guaranty prior to December 22, 2023.

19.    As of January 5, 2024, Bartoszek was still owed $500,000.00 in principal from LifeBrand and/or Colaiezzi, plus tens of thousands of dollars in late fees and penalties.

20.    Having still not been repaid, Bartoszek demanded payment in full via a January 5 letter from his counsel, attached as **Exhibit D** and incorporated by reference.

21.    Colaiezzi paid Bartoszek $70,000.00 on January 8, 2024. As of that date, Colaiezzi had accrued $85,000.00 in penalties under the Letter Agreement alone.

**C.  LifeBrand, Colaiezzi, and Celia Sign the Settlement Agreement, the New Note, the New Guaranty, the Bartoszek Mortgage, and the Spousal Consent**

22.    On the same day as Colaiezzi's January 8, 2024 penalty payment, Jim Quinlan, Esquire informed Bartoszek's counsel he was "involved" with the issues surrounding the Original Note and Original Guaranty, and that "we are working on resolving this issue." Quinlan's email is attached as **Exhibit E** and incorporated by reference.

23.    Quinlan is LifeBrand's General Counsel and Secretary of the Board of Directors.

24.    Quinlan does not represent Colaiezzi in Colaiezzi's individual capacity.

25.    In light of LifeBrand and Colaiezzi's continuing default under the Original Note and Original Guaranty, Bartoszek's counsel contacted Quinlan within days of the January 8 email to seek a resolution.

---

[4] Exhibit C, ¶ 4.

26. Following negotiations, the parties executed a Settlement and Release Agreement ("Settlement Agreement") on February 9, 2024, with an effective date of January 16, 2024. The Settlement Agreement is attached as **Exhibit F** and incorporated by reference.

27. Under the Settlement Agreement, the parties "deem[ed] the Original Note, Letter Agreement and Original Guaranty and all amounts due pursuant thereto satisfied," subject to the terms of the Settlement Agreement.[5]

28. The Settlement Agreement obligated the parties to execute a "New Note," "New Guaranty," "Bartoszek Mortgage," and "Spousal Consent."

29. The New Note, New Guaranty, Bartoszek Mortgage, and Spousal Consent were executed alongside the Settlement Agreement on February 9, 2024.

30. Under the New Note, LifeBrand was obligated to repay Bartoszek $500,000.00, plus fifteen percent interest, by March 11, 2024. The New Note is attached as **Exhibit G** and incorporated by reference.

31. Under the New Guaranty, Colaiezzi personally guaranteed LifeBrand's obligations under the New Note. The New Guaranty is attached as **Exhibit H** and incorporated by reference,

32. Under the Bartoszek Mortgage, Colaiezzi granted Bartoszek a lien and security interest in Colaiezzi's vacation home at 60 Arkansas Avenue, Ocean City, New Jersey (the "Property"). The Bartoszek Mortgage is attached as **Exhibit I** and incorporated by reference.

33. Celia, Colaiezzi's wife, signed a Spousal Consent to the Bartoszek Mortgage, under which she agreed "that I and any interest, including any community property interest, that I may have in the Property shall be irrevocably bound by the [Bartoszek] Mortgage." The Spousal Consent is attached as **Exhibit J** and incorporated by reference.

---

[5] Exhibit F, ¶ L.

34.    By the terms of the Settlement Agreement, Bartoszek agreed to "refrain from recording the [Bartoszek] Mortgage . . . prior to there being an event of default under the New Note and/or New Guaranty," but reserved the right to "immediately record the [Bartoszek] Mortgage without prior notice to Colaiezzi" upon default.[6]

35.    Most significantly, the Settlement Agreement restricts Colaiezzi's ability to grant mortgages or security interests in the Property superior to the Bartoszek Mortgage:

> "Until the New Note is fully paid and all obligations of LifeBrand and Colaiezzi owing to Bartoszek are fully satisfied, **Colaiezzi shall not permit any liabilities, debts, mortgages, security interests or other liens or encumbrances of any kind against the Property**; provided that Colaiezzi may obtain a loan or line of credit where the Property is collateral if the proceeds of the loan or line of credit are first used to fully satisfy the New Note and all amounts due or owing to Bartoszek.  For the avoidance [of] doubt, Bartoszek is aware of and agrees that Colaiezzi's pending line of credit with MidPenn Bank against the Property does not violate the terms of this Agreement so long as funds from [the] line of credit, upon closing, are used to settle all amounts owed to Bartoszek under the New Note."[7]

**D.  Colaiezzi Grants a Mortgage to MidPenn Bank**

36.    As the Settlement Agreement contemplated, Colaiezzi granted a mortgage on the Property to MidPenn Bank on February 8, 2024 (the "MidPenn Mortgage"). The MidPenn Mortgage is attached as **Exhibit K** and incorporated by reference.

37.     The MidPenn Mortgage was recorded in Cape May County, New Jersey on February 20, 2024 (book M6705, pages 806–816, instrument 2024031753).

---

[6] Exhibit F, ¶ 2(b).

[7] Exhibit F, ¶ 2(b).

6

38.     The recorded MidPenn Mortgage indicates Colaiezzi received $1,000,000.00 in consideration in exchange for granting the mortgage.

39.     However, despite the Settlement Agreement, the $1,000,000.00 disbursed to Colaiezzi or LifeBrand under the MidPenn Mortgage was not paid to Bartoszek.

**E.  Colaiezzi Grants a Mortgage to Hill**

40.     Just four days after Colaiezzi and LifeBrand signed the Settlement Agreement, Colaiezzi granted a mortgage in the Property to Defendant Hill on February 13, 2024 (the "Hill Mortgage"). The Hill Mortgage is attached as **Exhibit L** and incorporated by reference.

41.     The Hill Mortgage was recorded in Cape May County, New Jersey on February 20, 2024 (book M6705, pages 691–724, instrument 2024031694).

42.     Hill serves on LifeBrand's Board of Directors, alongside Colaiezzi and Quinlan.

43.     Under the Hill Mortgage, Colaiezzi pledged the Property to Hill as security for a $3,630,000.00 loan from Hill to LifeBrand, originally disbursed in 2022.

44.     Unlike the MidPenn Mortgage, the Hill Mortgage was **not** contemplated by the Settlement Agreement.

45.     In fact, the Settlement Agreement specifically prohibited "any liabilities, debts, mortgages, security interests or other liens or encumbrances of any kind against the Property," unless the proceeds of an associated loan or line of credit were used to repay Bartoszek.

46.     If any funds were disbursed to Colaiezzi or LifeBrand following the Hill Mortgage, those funds were not paid to Bartoszek.

**F. LifeBrand and Colaiezzi Default Again**

47.     Neither Colaiezzi nor LifeBrand repaid Bartoszek any amount by Bartoszek's March 11, 2024 deadline.

48.     Accordingly, Bartoszek recorded the Bartoszek Mortgage in Cape May County, New Jersey on March 20, 2024 (book M6712, pages 371–381, instrument 2024034074).

### III.   JURISDICTION, VENUE, AND CHOICE OF LAW

49.     The Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 (exclusive of interest and costs) and Bartoszek is not domiciled in the same state as any defendant.

50.     The Court has personal jurisdiction over LifeBrand because Bartoszek's claims against it arise out of Colaiezzi's New Jersey Property, which was used to secure LifeBrand's debt.

51.     The Court has personal jurisdiction over Colaiezzi because Bartoszek's claims against him arise out of his New Jersey Property.

52.     The Court has personal jurisdiction over Celia because Bartoszek's claims against her arise out of the Spousal Consent she signed relative to Colaiezzi's New Jersey Property.

53.     The Court has personal jurisdiction over Hill because Bartoszek's claims against him arise out of Hill's mortgage on Colaiezzi's New Jersey Property.

54.     Venue is proper because the Property that is the subject of the action is situated in Cape May County, New Jersey.

55.     Further, the Settlement Agreement, executed by Colaiezzi on his own behalf and on behalf of LifeBrand, contains a choice of law clause which indicates "any matter involving the

Mortgage . . . shall be governed by New Jersey law and matters involving the Mortgage may be brought in the courts having jurisdiction where the property is located."

## IV. GROUNDS FOR RELIEF

<u>**COUNT I**</u>
**NEW JERSEY UNIFORM VOIDABLE TRANSACTIONS ACT**
**(AS TO THE HILL MORTGAGE)**
N.J.S.A. §§ 25:2-20 TO 25:2-36

*BARTOSZEK V. COLAIEZZI*
*BARTOSZEK V. HILL*
*BARTOSZEK V. CELIA*

56. Plaintiff incorporates all preceding paragraphs by reference.

57. Colaiezzi and Hill entered into the Hill Mortgage with actual intent to hinder, delay, or defraud Bartoszek.

58. The particular circumstances constituting Colaiezzi and Hill's fraud on Bartoszek are as follows:

59. LifeBrand and Colaiezzi have been in significant debt to Bartoszek since October 2023.

60. Bartoszek has threatened litigation against LifeBrand and Colaiezzi repeatedly since December 2023.

61. LifeBrand board members Colaiezzi and Quinlan were aware of the threatened litigation against LifeBrand and Colaiezzi.

62. The threat of litigation and subsequent negotiations with Bartoszek induced LifeBrand and Colaiezzi to execute the Settlement Agreement, the New Note, the New Guaranty, and the Bartoszek Mortgage on February 9, 2024.

9

63. The Settlement Agreement expressly provided that "Colaiezzi shall not permit any liabilities, debts, mortgages, security interests or other liens or encumbrances of any kind against the Property," unless the proceeds of any associated loan or line of credit were used to satisfy all amounts due or owing to Bartoszek.

64. As a member of LifeBrand's Board of Directors, Hill is a corporate insider of the debtor LifeBrand.

65. Upon information and belief, Hill, Quinlan, and Colaiezzi are also close personal friends. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

66. Upon information and belief, based on the parties' board positions and suspect timing of the Hill Mortgage, Colaiezzi and Quinlan informed Hill of the debt to Bartoszek, the threatened litigation, and settlement discussions sometime between October 2023 and February 2024. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

67. Upon information and belief, based on the parties' board positions and suspect timing of the Hill Mortgage, Colaiezzi and Quinlan specifically informed Hill of the Settlement Agreement, the New Note, the New Guaranty, and the Bartoszek Mortgage sometime between February 9 and February 13, 2024. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

68. Colaiezzi granted the Hill Mortgage just four days after signing the Settlement Agreement, which explicitly forbade him from doing so.

69. LifeBrand and Colaiezzi were in substantial debt shortly before Colaiezzi granted the Hill Mortgage.

70.    Upon information and belief, based on representations made by Colaiezzi and Quinlan from December through March 2024, Colaiezzi and LifeBrand were insolvent at the time Colaiezzi granted the Hill Mortgage. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

71.    Colaiezzi's wife, Celia, is a proper party to this action because any interest Celia may have in the Property is also irrevocably bound by the Bartoszek Mortgage under Celia's Spousal Consent.

72.    Under the New Note and New Guaranty, Bartoszek is entitled to "all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred . . . in connection with the enforcement of [his] rights hereunder."

WHEREFORE, Bartoszek respectfully requests the Court (a) void the Hill Mortgage, or, in the alternative, declare that the Hill Mortgage is subordinate to the Bartoszek Mortgage; and (b) award Bartoszek attorneys' fees, together with interest and costs, against Colaiezzi as authorized in the New Note and New Guaranty.

<u>**COUNT II**</u>
**NEW JERSEY UNIFORM VOIDABLE TRANSACTIONS ACT**
**(AS TO $1,000,000.00 CASH)**
N.J.S.A. §§ 25:2-20 TO 25:2-36

*BARTOSZEK V. LIFEBRAND*
*BARTOSZEK V. COLAIEZZI*
*BARTOSZEK V. HILL*

73.    Plaintiff incorporates all preceding paragraphs by reference.

74.    Upon information and belief, based on the timing of the MidPenn Mortgage and the Hill Mortgage, and additionally based on Hill and Colaiezzi's personal and professional relationship, some or all of the $1,000,000.00 disbursement from MidPenn to Colaiezzi was transferred from Colaiezzi to Hill or LifeBrand as part of the Hill Mortgage transaction. Further

11

investigation or discovery will likely provide additional evidentiary support for this factual contention.

75. Based on the same badges of fraud and factual averments asserted in Count I (as to the Hill Mortgage transaction), any amount of the $1,000,000.00 disbursement from MidPenn to Colaiezzi transferred from Colaiezzi to Hill or LifeBrand is voidable under the Uniform Voidable Transactions Act.

76. Under the New Note and New Guaranty, Bartoszek is entitled to "all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred . . . in connection with the enforcement of [his] rights hereunder."

WHEREFORE, Bartoszek respectfully requests the Court (a) void any transfer from Colaiezzi to Hill or LifeBrand of any MidPenn disbursement to Colaiezzi; (b) order that any funds paid from Colaiezzi to Hill or LifeBrand out of any MidPenn disbursement must instead be paid to Bartoszek, in satisfaction of Colaiezzi and LifeBrand's obligations to Bartoszek; and (c) award Bartoszek attorneys' fees, together with interest and costs, against Colaiezzi and LifeBrand, jointly and severally, as authorized in the New Note and New Guaranty.

## COUNT III
### COMMON LAW FRAUD

*BARTOSZEK V. LIFEBRAND*
*BARTOSZEK V. COLAIEZZI*
*BARTOSZEK V. HILL*

77. Plaintiff incorporates all preceding paragraphs by reference.

78. In the Settlement Agreement between Bartoszek, LifeBrand, and Colaiezzi, Colaiezzi represented that he would not "permit any . . . mortgages . . . against the Property; provided that Colaiezzi may obtain a loan or line of credit where the Property is collateral if the

12

proceeds of the loan or line of credit are first used to fully satisfy the New Note and all amounts due or owing to Bartoszek."

79. In the New Note between Bartoszek and LifeBrand, Colaiezzi represented that LifeBrand would "pay to the order of Ray Bartoszek, an adult individual with an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut . . . the principal amount of Five Hundred Thousand Dollars . . . together with all accrued interest thereon."

80. In the New Guaranty between Bartoszek and Colaiezzi, Colaiezzi represented that he "absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by [LifeBrand] under or relating to the Note."

81. Colaiezzi's representations were false when made.

82. Colaiezzi knew the promises expressed in the Settlement Agreement, New Note, and New Guaranty were false.

83. Colaiezzi made the false promises in his individual capacity and in his capacity as LifeBrand's agent.

84. In his individual capacity, Colaiezzi never intended to repay any amount owed to Bartoszek, or to refrain from permitting any mortgages against the Property.

85. In his capacity as LifeBrand's agent, Colaiezzi never intended to cause LifeBrand to repay any amount owed to Bartoszek.

86. Colaiezzi intended that Bartoszek would rely on his misrepresentations and refrain from filing suit or recording the Bartoszek Mortgage, to buy Colaiezzi time to mortgage the Property to Hill.

13

87.    Bartoszek reasonably relied on Colaiezzi's misrepresentations by refraining from filing suit or recording the Bartoszek Mortgage until Colaiezzi's default.

88.    Bartoszek has suffered damages from his reasonable reliance on Colaiezzi's misrepresentations.

89.    Upon information and belief, based on the parties' board positions and suspect timing of the Hill Mortgage, Hill conspired with Colaiezzi to induce Bartoszek into refraining from filing suit or recording the Bartoszek Mortgage, so that the Hill Mortgage would be superior to the Bartoszek Mortgage. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

90.    Upon information and belief, additional LifeBrand board members or corporate insiders participated in the fraudulent conduct alleged in this Count III. Further investigation or discovery will likely provide additional evidentiary support for this factual contention.

91.    Under the New Note and New Guaranty, Bartoszek is entitled to "all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred . . . in connection with the enforcement of [his] rights hereunder."

WHEREFORE, Bartoszek respectfully requests the Court (a) award compensatory damages, together with interest and costs, against LifeBrand, Colaiezzi, and Hill, jointly and severally; and (b) award punitive damages and attorneys' fees, together with interest and costs, against LifeBrand, Colaiezzi, and Hill, jointly and severally; or, in the alternative, award attorneys' fees, together with interest and costs, against Colaiezzi and LifeBrand, jointly and severally, as authorized in the New Note and New Guaranty.

Respectfully submitted,

GAWTHROP GREENWOOD, P.C.

Date:   April 18, 2024

By:   _____
Stephen R. McDonnell, Esquire
(NJ ID: 035991994)
smcdonnell@gawthrop.com

Jeremy Grivensky, Esquire
(NJ ID: 444602023)
jgrivensky@gawthrop.com

17 E. Gay Street, Suite 100
West Chester, PA 19381

*Attorneys for Plaintiff Ray Bartoszek*