# EXHIBIT

# F

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (as may be amended, modified or supplemented from time to time, this "Agreement") is entered into as of January 16, 2024 (the "Effective Date") by and between LIFEBRAND, INC., a Delaware corporation ("LifeBrand") with an address a 20-22 North Church Street West Chester, Pennsylvania, THOMAS J. COLAIEZZI, an adult individual (Colaiezzi") with an address at 20-22 North Church Street, West Chester, Pennsylvania, and RAY BARTOSZEK, an adult individual ("Bartoszek") with an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut. Collectively, LifeBrand, Colaiezzi and Bartoszek are each a "Party" and collectively the "Parties."

### Background

**A.**      Colaiezzi is the Chief Executive Officer of LifeBrand.

**B.**      LifeBrand, as maker, and Bartoszek, as holder, entered into that certain Short Term Bridge Promissory Note dated as of October 19, 2023 (the "Original Note") in the principal amount of Five Hundred Thousand Dollars ($500,0000) evidencing a loan in that same amount from Bartoszek to LifeBrand (the "Loan").

**C.**      In connection with the Original Note, Colaiezzi, as guarantor, executed that certain Guaranty Agreement dated October 19, 2023 (the "Original Guaranty") whereby Colaiezzi guaranteed all obligations of LifeBrand under the Original Note.

**D.**      As part of the Original Guaranty, Colaiezzi pledged his real estate located at 60 Arkansas Ave, Ocean City, NJ 08226 (the "Property") as collateral security for Colaiezzi's obligations under the Original Guaranty.

**E.**      The Original Note provided for two separate maturity dates, November 3, 2023 and November 17, 2023 (collectively, the "Maturity Dates"), that LifeBrand was obligated to pay principal and interest of the Original Note by, as more particularly described in the Original Note. LifeBrand failed to pay the Loan by either of the Maturity Dates.

**F.**      On December 7, 2023, Colaiezzi paid Bartoszek Eighty Thousand Dollars ($80,000), of which Seventy-Five Thousand Dollars ($75,000) was allocated to interest due under the Original Note and Five Thousand Dollars ($5,000) was allocated as a late fee by the Parties.

**G.**      Following demand for full payment, Colaiezzi drafted and sent Bartoszek a letter titled Confirmation of Promise of Repayment and Amendment of Personal Guarantee for Penalty, dated December 15, 2023 (the "Letter Agreement"), as an amendment to the Original Guaranty, pursuant to which Bartoszek granted LifeBrand an extension to repay the Loan by December 22, 2023 and, in exchange, Colaiezzi personally and on behalf of LifeBrand pay Bartoszek a penalty of Five Thousand Dollars ($5,000) per day for every day after December 22, 2023 that the Loan has not been repaid in full (the "Penalty").

1

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**H.**     Neither Colaiezzi nor LifeBrand made any principal payment under the Note or Personal Guaranty (as amended by the Letter Agreement) prior to December 22, 2023, resulting in the Penalty beginning to accrue on December 23, 2023.

**I.**     Pursuant to a January 5, 2024 letter from Cully C. Carson IV, Esq., as counsel for Bartoszek, Bartoszek again demanded payment of the Loan (plus interest and accrued Penalty) in full.

**J.**     Colaiezzi paid Bartoszek Seventy Thousand Dollars ($70,000) on January 8, 2024. By that date, the Penalty had accrued to Eighty-Five Thousand Dollars ($85,000).

**K.**     As of the date of this Agreement, LifeBrand and Colaiezzi are in default and still owe the Loan ($500,000) plus interest and the accrued Penalty (the "Dispute").

**L.**     Subject to the terms of this Agreement, the Parties have agreed to resolve this Dispute by deeming the Original Note,    Letter Agreement and Original Guaranty and all amounts due pursuant thereto satisfied, and entering into: (i) a new promissory note from LifeBrand to Bartoszek; (ii) a new personal guaranty from Colaiezzi; and (iii) Colaiezzi entering into a  mortgage on the Property to secure his obligations under the new personal guaranty subject to the filing restrictions set for in Section 2(b) below, all as further described in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which each of the Parties acknowledges, the Parties hereby agree as follows:

<u>Agreement</u>

**1.**     **Background Recitals**. The Background recitals are incorporated herein by reference.

**2.**     **Settlement**.

(a)     *New Documents*. In consideration for settling the Dispute, upon execution of this Agreement, the Parties shall, as applicable, deliver the following executed documents:

(i)     A new promissory note substantially in the form attached hereto as ***Exhibit A*** (the "New Note") with interest beginning to accrue under the New Note as of January 8, 2024;

(ii)     A new personal guaranty substantially in the form attached here to as ***Exhibit B*** (the "New Guaranty"); and

(iii)     A mortgage securing the obligations under the New Guaranty against the Property substantially in the form attached hereto as ***Exhibit C*** (the "Mortgage").

(b)     *Mortgage*. Bartoszek agrees to refrain from recording the    Mortgage with the applicable recorder of deeds office prior to there being an event of default under the New Note and/or New Guaranty; provided that if an event of default occurs under the New Note

2

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

and/or New Guaranty, Bartoszek may immediately record the Mortgage without prior notice to Colaiezzi. Until the New Note is fully paid and all obligations of LifeBrand and Colaiezzi owing to Bartoszek are fully satisfied, Colaiezzi shall not permit any liabilities, debts, mortgages, security interests or other liens or encumbrances of any kind against the Property; provided that Colaiezzi may obtain a loan or line of credit where the Property is collateral if the proceeds of· the loan or line of credit are first used to fully satisfy the New Note and all amounts due or owing to Bartoszek. For the avoidance doubt, Bartoszek is aware of and agrees that Colaiezzi's pending line of credit with MidPenn Bank against the Property does not violate the terms of this Agreement so long as funds from line of credit, upon closing, are used to settle all amounts owed to Bartoszek under the New Note.

(c)    *Prior Agreements*. Upon full execution of this Agreement and the delivery of the executed documents to be delivered pursuant to this Agreement, the Original Note, Original Guaranty, and Letter Agreement shall be null and void.

(d)    *Acknowledgment of Compliance with Corporate Agreements*. Bartoszek has previously entered into, and is currently a party to, agreements with LifeBrand in connection with Bartoszek's stock, stock options, and board advisor role with LifeBrand, including but not limited to that certain Advisory Board Agreement dated October 19, 2023, that certain Stockholder Agreement dated October 19, 2023, and that certain Non-Qualified Stock Option Agreement with an effective date of October 19, 2023 (collectively, the "Corporate Agreements"). LifeBrand and Colaiezzi hereby acknowledge and agree that Bartoszek's entry into, or enforcement of, this Agreement, the New Note, the New Guaranty and/or the Mortgage shall not be deemed a breach of any Corporate Agreements by Bartoszek or otherwise be contrary to any of Bartoszek's duties or obligations under the Corporate Agreements or under law. Without limiting the foregoing, the Twenty-Five Thousand (25,000) shares of LifeBrand stock options issued to Bartoszek shall remain in full force and effect after the date of this Agreement. For the avoidance of doubt: (i)    nothing in this Agreement, subject to the terms of this subpart, shall relieve Bartoszek of any of his duties and/or obligations under the Corporate Agreements, including in pertinent part, all choices of law clauses and confidentiality provisions; and (ii) nothing in the Corporate Agreements prohibits the actions contemplated by this Agreement, including without limitation, Bartoszek's enforcement of the New Note, New Guaranty, and Mortgage according to their terms and applicable law.

3.    **Release**.

(a)    *Scope of Release*. The Parties agree to release and waive each and every claim stated in this paragraph (the "Released Claims").

(b)    *Mutual Release*. Each Party, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them,

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

hereby release and discharge the other Parties, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which any Party has, or may have had, against the other Parties, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from the Dispute. This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute.

4. **No Outstanding or Known Future Claims or Causes of Action**. Each Party warrants that it has not filed with any governmental agency or court any type of action or report against another Party, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the Released Claims.

5. **Right to Settle. Acknowledgment of Settlement. Cooperation.**

(a) *No Assignment or Transfer of Claims*. Each Party warrants that it has the right and authority to enter into this Agreement and perform the obligations hereunder, and to release, relinquish, settle, and discharge all Released Claims addressed in the Release section of this Agreement and that it has not transferred such right or authority to any individual or entity who is not a party to this Agreement.

(b) *Acknowledgment*. The Parties acknowledge that: (i) the consideration set forth in this Agreement is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the another Party by reason of the Dispute; and (ii) by entering into this Agreement, signing it, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the another Party and another Party's affiliated persons and entities as broadly described in the Release section of this Agreement, for any acts or omissions up to and including the Effective Date of this Agreement, involving the Dispute.

(c) *Agreement to Cooperate*. Each Party agrees to take all actions and to make, deliver, sign, and file any other documents and instruments that are necessary to carry out the terms, provisions, purpose, and intent of this Agreement.

6. **No Admission of Liability**. The Parties understand and agree that this Agreement and the performance of the conditions and provisions of this Agreement are not to be construed as an admission of any liability whatsoever by any of the Parties to this Agreement.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

7. **Agreement Is Legally Binding**. The Parties intend that this Agreement will be legally binding upon and shall inure to the benefit of each of them and their respective predecessors, successors, assigns, executors, administrators, heirs, and estates.

8. **Entire Agreement**. This Agreement, including the background recitals and exhibits, constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and proposed agreements, written or oral concerning the subject matter hereof. Each Party acknowledges that in entering into this Agreement, it has not relied on any promise, representation, or warranty not contained in this Agreement.

9. **Modification**. Any modification of this Agreement must be in a writing signed by the Parties in order to be binding.

10. **Interpretation. Severability; Enforcement**.

(a) *Interpretation*. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. The Parties agree that they participated equally in drafting and negotiating the terms of this Agreement and that this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

(b) *Severability*. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

(c) *Enforcement*. Nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

11. **Choice of Law and Forum**.

(a) *Choice of Law*. This Agreement and all related documents including all exhibits attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania (including its statutes of limitation), without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the Commonwealth of Pennsylvania. It is understood and agreed that the Corporate Agreements are not subject to this Agreement's Choice of Law provision found in this subpart. It is further understood and agreed that the choice of law provisions in the Corporate Agreements do not govern the choice of law provisions for enforcement of this     Agreement.

(b) *Choice of Forum*. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way arising from or relating to this Agreement and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than the state or federal courts of the Commonwealth of Pennsylvania located in Chester County. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

of such courts as well as service of process by notice sent in compliance with the terms of the Notice section of this Agreement or by any means authorized by Pennsylvania law. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. It is understood and agreed that the Corporate Agreements are not subject to this Agreement's Choice of Forum provision found in this subpart. It is further understood and agreed that the choice of forum provisions found in the Corporate Documents do not govern the choice of forum provisions for the enforcement of this Agreement.

(c) *Mortgage*. Notwithstanding anything to the contrary contained herein, any matter involving the Mortgage, which is subject to the filing restrictions set for in Section 2(b) above, shall be governed by New Jersey law and matters involving the Mortgage may be brought in the courts having jurisdiction where the Property is located.

12. **Notice**. Each Party shall deliver all notices, requests, consents, claims, demands, waivers, and other communications under this Agreement (each, a "Notice") in writing and addressed to the other Parties at their address set out in the first paragraph of this Agreement (or to any other address that the receiving Party may designate from time to time in accordance with this section). Each Party shall deliver all Notices by personal delivery, nationally recognized overnight courier (with all fees prepaid), facsimile or email (with confirmation of transmission), or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) upon receipt by the receiving party; and (b) if the party giving the Notice has complied with the requirements of this Section.

13. **Reliance on Own Counsel; Costs**. In entering into this Agreement, each Party acknowledges that: (a) it has had the opportunity to seek and rely upon the legal advice of attorneys of its own choosing; (b) it fully understands and voluntarily accepts the Agreement's terms based on the consideration set forth in this Agreement and not on any other promises or representations by the other Party or any attorney or other agent or representative of the other Party; (c) in deciding to sign this Agreement, it did not rely, and has not relied, on any oral or written representation or statement by the other Party or any attorney, or other agent or representative of the other Party, including but not limited to any representation or statement about the subject matter, basis or effect of this Agreement. The Parties acknowledge and agree that each Party is solely responsible for paying any attorneys' fees and costs it incurred in connection with the Dispute, including but not limited to costs and attorneys' fees incurred in connection with the negotiation and execution of this Agreement.

14. **Counterparts and Copies**. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures and signature pages sent by electronic mail shall be binding as though they are originals.

15. **Authority to Execute Agreement**. By signing below, each Party warrants and represents that it is authorized to execute this Agreement or the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is

6

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

not in violation of any by-law, covenants and/or other restrictions placed upon the Party by its governing authorities.

[Signature Page Follows]

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**EACH OF THE PARTIES CERTIFIES THAT IT HAS READ ALL OF THIS AGREEMENT AND FULLY UNDERSTANDS AND AGREES TO EACH OF THE ABOVE TERMS, CONDITIONS, AND PROVISIONS.**

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the undersigned Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

**LIFEBRAND:**

LifeBrand, Inc.

By: *Thomas Colaiezzi*

      Name: Thomas J. Colaiezzi
      Title: CEO

**COLAIEZZI:**

*Thomas Colaiezzi*

Thomas J. Colaiezzi

**BARTOSZEK:**

Ray Bartoszek

8

**EACH OF THE PARTIES CERTIFIES THAT IT HAS READ ALL OF THIS AGREEMENT AND FULLY UNDERSTANDS AND AGREES TO EACH OF THE ABOVE TERMS, CONDITIONS, AND PROVISIONS.**

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the undersigned Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

**LIFEBRAND**:

LifeBrand, Inc.

By: _____
    Name: Thomas J. Colaiezzi
    Title: CEO

**COLAIEZZI**:

_____
Thomas J. Colaiezzi

**BARTOSZEK**:

_____
Ray Bartoszek

8

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**EXHIBIT A**
**New Note**

**PROMISSORY NOTE**

$500,000                                            February 5_____, 2024

**FOR VALUE RECEIVED**, LIFEBRAND, INC., a Delaware corporation with an address a 20-22 North Church Street West Chester, Pennsylvania (the "Borrower") hereby unconditionally promises to pay to the order of RAY BARTOSZEK, an adult individual with an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut (the "Noteholder") the principal amount of Five Hundred Thousand Dollars ($500,000) (the "Loan"), together with all accrued interest thereon, as provided in this Promissory Note (as may be amended, modified or supplemented from time to time, this "Note"). The obligations under this Note are being personal guaranteed by Thomas J. Colaiezzi pursuant to a separate Guaranty Agreement of even date herewith.

1.    **Payment Dates**.

(a)    *Payment Date*. The aggregate unpaid principal amount of the Loan, all accrued and unpaid interest, and all other amounts payable under this Note shall be due and payable on March 11, 2024 (the "Maturity Date").

(b)    *Prepayment*. The Borrower may prepay the Loan in whole or in part at any time or from time to time without penalty or premium by paying the principal amount to be prepaid together with accrued interest thereon to the date of the prepayment.

(c)    *No Reborrowing*. Principal amounts repaid or prepaid may not be reborrowed.

2.    **Interest**.

(a)    *Interest Rate*. Except as provided in Section 2(b), the principal amount outstanding under this Note from time to time shall bear interest at a rate per annum (the "Interest Rate") equal to fifteen percent (15%). Notwithstanding anything to the contrary contained herein, for purposes of calculating the interest on the principal amount of the Loan due on the Maturity Date, the interest shall be calculated as if it started accruing as of January 8, 2024 at the Interest Rate.

(b)    *Default Interest*. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus five percent (5%) (the "Default Rate").

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(c) *Computation of Interest*. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on the date of this Note. For any portion of the Loan that is repaid, interest shall not accrue on the date on which such payment is made.

(d) *Interest Rate Limitation*. If at any time the Interest Rate payable on the Loan shall exceed the maximum rate of interest permitted under applicable law, such Interest Rate shall be reduced automatically to the maximum rate permitted.

3.    **Payment Mechanics**.

(a) *Manner of Payment*. All payments of principal and interest shall be made in US dollars no later than 5:00 PM on the date on which such payment is due. Such payments shall be made by wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

(b) *Application of Payments*. All payments shall be applied, first, to fees or charges outstanding under this Note as set forth and limited to Section 8 of this Note, second, to accrued interest, and, third, to principal outstanding under this Note.

(c) *Business Day*. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "Business Day" means a day other than Saturday, Sunday, or other day on which commercial banks in Philadelphia, PA are authorized or required by law to close.

4.    **Representations and Warranties**. The Borrower represents and warrants to the Noteholder as follows:

(a) *Existence*. The Borrower is a corporation duly incorporated, validly existing, and in good standing under the laws of the state of its organization. The Borrower has the requisite power and authority to own, lease, and operate its property, and to carry on its business.

(b) *Compliance with Law*. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower, its property, and business.

(c) *Power and Authority*. The Borrower has the requisite power and authority to execute, deliver, and perform its obligations under this Note.

(d) *Authorization; Execution and Delivery*. The execution and delivery of this Note by the Borrower and the performance of its obligations hereunder have been duly authorized by all necessary corporate action in accordance with applicable law. The Borrower has duly executed and delivered this Note.

5.    **Events of Default**. The occurrence and continuance of any of the following shall constitute an "Event of Default" hereunder:

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(a)     *Failure to Pay*. The Borrower fails to pay any amount due hereunder when such amount is due.

(b)     *Breach of Representations and Warranties*. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

(c)     *Bankruptcy; Insolvency.*

(i)     The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

(ii)     An involuntary case is commenced seeking the liquidation or reorganization of the Borrower under any law relating to bankruptcy or insolvency, and such case is not dismissed or vacated within thirty (30) days of its filing.

(iii)     The Borrower makes a general assignment for the benefit of its creditors.

(iv)     The Borrower is unable, or admits in writing its inability, to pay its debts as they become due.

(v)     A case is commenced against the Borrower or its assets seeking attachment, execution, or similar process against all or a substantial part of its assets, and such case is not dismissed or vacated within thirty (30) days of its filing.

(d)     *Failure to Give Notice*. The Borrower fails to give the notice of Event of Default specified in Section 6 below.

6.     **Notice of Event of Default**. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within two (2) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

7.     **Remedies**. Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at its option, by written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; provided, however, if an Event of Default described in Sections 5(c)(i), 5(c)(iii), or 5(c)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

8.     **Expenses**. In the Event of Default, but under no conditions sooner, the Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by the Noteholder in connection with the enforcement of the Noteholder's rights hereunder.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

9.      **Notices**. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (a) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (b) transmittal by electronic communication (including email  or facsimile properly addressed) with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment; or (c) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the addresses for each party first set forth above, or to such other address as such party shall specify in writing.

10.      **Governing Law**. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

11.      **Disputes**.

(a)      *Submission to Jurisdiction*.

(i)      The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the Commonwealth of Pennsylvania sitting in Chester County, and in the United States District Court for the Eastern District of Pennsylvania, and (B) submits to the exclusive jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(ii)      Nothing in this Section 11(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

(iii)      Nothing in this Section 11(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

(b)      *Venue*. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 11(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

12.      **Agreement Is Legally Binding**. The parties intend that this Note will be legally binding upon and shall inure to the benefit of each of them and their respective predecessors, successors, assigns, executors, administrators, heirs, and estates..

13.      **Integration**. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**14.** **Amendments and Waivers**. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

**15.** **No Waiver; Cumulative Remedies**. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

**16.** **Severability**. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

**17.** **Counterparts**. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif" or any other electronic means that reproduces an image of the actual executed signature page) format shall be as effective as delivery of a manually executed counterpart of this Note.

**18.** **Electronic Execution**. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. §§ 7001-7031), and any other similar state laws based on the Uniform Electronic Transactions Act.

**19.** **CONFESSION OF JUDGMENT**.

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, THE BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY, PROTHONOTARY, OR CLERK OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR THE BORROWER AND ALL PERSONS CLAIMING UNDER OR THROUGH THE BORROWER, TO APPEAR FOR THE BORROWER AT ANY TIME OR TIMES, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST THE BORROWER BY NOTEHOLDER WITH RESPECT TO THE AGGREGATE AMOUNTS PAYABLE HEREUNDER, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST THE BORROWER FOR ALL SUMS PAYABLE FROM THE BORROWER TO NOTEHOLDER HEREUNDER, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF NOTEHOLDER SETTING FORTH

13

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

SUCH AMOUNT THEN DUE FROM THE BORROWER TO NOTEHOLDER, PLUS REASONABLE ATTORNEYS' FEES, WITH COSTS OF SUIT, RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AFFIDAVIT SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. THE BORROWER WAIVES THE RIGHT TO FILE ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS NOTEHOLDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO NOTEHOLDER HEREUNDER SHALL HAVE BEEN PAID IN FULL.

**20.    ACKNOWLEDGMENT OF CONFESSION OF JUDGMENT.**

SECTION 19 SETS FORTH A WARRANT OF AUTHORITY FOR AN ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER, THE BORROWER HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, AND AFTER CONSULTING WITH SEPARATE COUNSEL OF THE BORROWER UNCONDITIONALLY: (A) WAIVES ANY AND ALL RIGHTS THE BORROWER HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA OR OTHERWISE, INCLUDING ANY PRIOR NOTICE AND OPPORTUNITY BEFORE JUDGMENT IS ENTERED OR BEFORE EXECUTION IS ISSUED UPON ANY JUDGMENT SO ENTERED; AND (B) RELEASES NOTEHOLDER FROM ALL ERRORS OR DEFECTS IN ENTERING ANY ACTION TO CONFESS JUDGMENT, IN CAUSING SUCH WRIT OR WRITS TO BE ISSUED, OR IN CAUSING ANY JUDGMENT TO BE ENTERED, AND AGREES THAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR STRIKE OFF JUDGMENT, OR OTHER OBJECTION SHALL BE FILED OR MADE WITH RESPECT THERETO. THE BORROWER, BY EXECUTING THE FOLLOWING SIGNATURE LINE, ACKNOWLEDGES THAT THE BORROWER COMPREHENDS FULLY THE EFFECT OF THIS CONFESSION OF JUDGMENT, INCLUDING THE: (I) WAIVER OF PRIOR NOTICE AND OPPORTUNITY FOR A HEARING BEFORE THE ENTRY OF A JUDGMENT OR ANY EXECUTION ISSUING ON THAT JUDGMENT, AND (II) RELEASE OF NOTEHOLDER FROM ALL ERRORS OR DEFECTS IN ENTERING ANY ACTION TO CONFESS JUDGMENT, IN CAUSING SUCH WRIT OR WRITS TO BE ISSUED, OR IN CAUSING ANY JUDGMENT TO BE ENTERED AND AGREES THAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR STRIKE OFF JUDGMENT, OR OTHER OBJECTION SHALL BE FILED OR MADE WITH RESPECT THERETO.

[Signature Page Follows]

14

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**IN WITNESS WHEREOF**, the Borrower has executed this Note as of the first set forth above.

**BORROWER**:

LifeBrand, Inc.

By: _Thomas Colaiezzi_____

Name: Thomas J. Colaiezzi
Title: CEO

15

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

## EXHIBIT B
## New Guaranty

## Guaranty Agreement

This Guaranty Agreement (as amended, modified or supplemented from time to time, this "Guaranty"), dated as of _____February 5_____, 2024 (the "Effective Date"), is signed by THOMAS J. COLAIEZZI, an adult individual ("Guarantor") with an address of 20-22 North Church Street, West Chester, Pennsylvania, as consideration for and in order to induce RAY BARTOSZEK, an adult individual ("Noteholder") with an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut, to enter into that certain Promissory Note of event date herewith (as may be amended, modified or supplemented from time to time, the "Note") with LIFEBRAND, INC., a Delaware corporation ("Borrower") with an address a 20-22 North Church Street West Chester, Pennsylvania, and Guarantor hereby agrees as follows:

1.    **Obligations**. Guarantor absolutely, unconditionally and irrevocably guarantees, as primary obligor and not merely as surety, the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by Borrower under or relating to the Note, plus all costs, expenses and fees (including the reasonable fees and expenses of Noteholder's counsel) in any way relating to the enforcement or protection of Noteholder's rights hereunder (collectively, the "Obligations").

2.    **Unconditional Guaranty**. Guarantor agrees that his Obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement it may have (now or in the future) by reason of:

(a)    Any illegality, invalidity or unenforceability of any Obligation or the Note or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations.

(b)    Any change in the time, place or manner of payment or performance of, or in any other term of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Note.

(c)    Any taking, exchange, substitution, release, impairment, amendment, waiver, modification or non-perfection of any collateral or any other guaranty for the Obligations, or any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of the Obligations.

(d)    Any default, failure or delay, willful or otherwise, in the performance of the Obligations.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(e)     Any change, restructuring or termination of the corporate structure, ownership or existence of Guarantor or Borrower or any insolvency, bankruptcy, reorganization or other similar proceeding affecting Borrower or its assets or any resulting restructuring, release or discharge of any Obligations.

(f)     The failure of Noteholder to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of the Note or otherwise.

(g)     The existence of any claim, set-off, counterclaim, recoupment or other rights that Guarantor or Borrower may have against Noteholder.

(h)     Any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Note or any existence of or reliance on any representation by Borrower that might vary the risk of Guarantor or otherwise operate as a defense available to, or a legal or equitable discharge of, Guarantor.

3.     **Waiver**. Guarantor agrees that this Guaranty constitutes a guaranty of payment and performance when due and not just of collection. Guarantor waives presentment and demand for payment, notice of non-payment or non-performance, and any other notice or demand to which Guarantor might otherwise be entitled to receive. Noteholder shall not be required to resort to any other person or entity or to any security for payment or performance of any part of the Note.

4.     **Joint and Several Liability**. Noteholder may, at Noteholder's option, proceed against Guarantor and Borrower, jointly and severally, or against Guarantor only without having obtained a judgment against Borrower. Upon payment by Guarantor of any sums to Noteholder hereunder, all rights of Guarantor against Borrower arising as a result thereof by way of right of subrogation, indemnification, or otherwise shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full of all obligations under the Note.

5.     **Further Assurances and Severability**.

(a)     Guarantor will execute, acknowledge, and deliver, at its own expense, all instruments and take all action as Noteholder from time to time may reasonably request for ensuring Noteholder the full benefits of this Guaranty.

(b)     If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty will not be affected thereby, and each provision of this Guaranty will be valid and enforceable to the fullest extent permitted by law. Noteholder's delay in exercising, or the failure to exercise, any right under this Guaranty will not waive such right or any other right of Noteholder. All remedies of Noteholder by reason of this Guaranty are separate and cumulative and no single remedy, whether or not exercised by Noteholder, will exclude any other remedy of Landlord or limit or prejudice any other legal or equitable remedy which Landlord may have.

6.     **Notices**. All notices and other communications relating to this Guaranty shall be in writing and shall be deemed given upon the first to occur of (a) deposit with the United States

17

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

Postal Service or overnight courier service, properly addressed and postage prepaid; (b) transmittal by electronic communication (including email or facsimile properly addressed) with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment; or (c) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the addresses for each party first set forth above, or to such other address as such party shall specify in writing.

7.    **Security**. As collateral security for the payment and performance in full of all the Obligations, Grantor hereby pledges to the Noteholder and grants to the Noteholder a lien on and security interest in and to, all of the right, title and interest of such Grantor in, to and under the Guarantor's property located at 60 Arkansas Avenue, Ocean City, NJ 08226, with such security being perfected with, and as further described in, that certain Mortgage by and between Guarantor, as borrower, and Noteholder, as lender, of even date herewith.

8.    **Miscellaneous**.

(a)    If judgment is entered against Guarantor in any action to enforce this Guaranty, Guarantor will reimburse Noteholder for all reasonable expenses incurred by Noteholder in connection therewith, including reasonable attorneys' fees and disbursements.

(b)    This Guaranty may not be changed or terminated orally or in any manner other than by a written agreement signed by Guarantor and Noteholder.

(c)    Each reference herein to Noteholder shall be deemed to include his heirs, successors, and assigns, in whose favor the provisions of this Guaranty shall also inure. Each reference herein to Guarantor shall be deemed to include his heirs, successors, and assigns, all of whom shall be bound by the provisions of this Guaranty.

(d)    This Guaranty will be governed by the laws of the Commonwealth of Pennsylvania.

(e)    All capitalized terms not defined herein shall have the meaning accorded them in the Note, a true and correct copy of which Guarantor hereby acknowledges receipt.

(f)    Guarantor hereby agrees that any suit, action, or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Guaranty or the transactions contemplated hereby, whether in contract, tort, or otherwise, shall be brought in the courts of the Commonwealth of Pennsylvania having jurisdiction in Chester County. Guarantor irrevocably consents to the personal and subject matter jurisdiction of those courts in any legal action relating to this Guaranty or any of Guarantor's obligations under this Guaranty, and Guarantor shall not assert, by way of motion, as a defense or otherwise, any objection to any such court being the venue of such legal action or claim that such venue is an inconvenient forum for Guarantor.

9.    **WARRANT OF ATTORNEY AND CONFESSION OF JUDGMENT - MONEY**.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY, PROTHONOTARY, OR CLERK OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR THE GUARANTOR AND ALL PERSONS CLAIMING UNDER OR THROUGH THE GUARANTOR, TO APPEAR FOR THE GUARANTOR AT ANY TIME OR TIMES, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST THE GUARANTOR BY NOTEHOLDER WITH RESPECT TO THE AGGREGATE AMOUNTS PAYABLE HEREUNDER, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST THE GUARANTOR FOR ALL SUMS PAYABLE FROM THE GUARANTOR TO NOTEHOLDER HEREUNDER, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF NOTEHOLDER SETTING FORTH SUCH AMOUNT THEN DUE FROM THE GUARANTOR TO NOTEHOLDER, PLUS REASONABLE ATTORNEYS' FEES, WITH COSTS OF SUIT, RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS NOTE, VERIFIED BY AFFIDAVIT SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. THE GUARANTOR WAIVES THE RIGHT TO FILE ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS NOTEHOLDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO NOTEHOLDER HEREUNDER SHALL HAVE BEEN PAID IN FULL.

**10. ACKNOWLEDGMENT OF CONFESSION OF JUDGMENT**.

SECTION 9 SETS FORTH A WARRANT OF AUTHORITY FOR AN ATTORNEY TO CONFESS JUDGMENT AGAINST THE GUARANTOR. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE GUARANTOR, THE GUARANTOR HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, AND AFTER CONSULTING WITH SEPARATE COUNSEL OF THE GUARANTOR UNCONDITIONALLY: (A) WAIVES ANY AND ALL RIGHTS THE GUARANTOR HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA OR OTHERWISE, INCLUDING ANY PRIOR NOTICE AND OPPORTUNITY BEFORE JUDGMENT IS ENTERED OR BEFORE EXECUTION IS ISSUED UPON ANY JUDGMENT SO ENTERED; AND (B) RELEASES NOTEHOLDER FROM ALL ERRORS OR DEFECTS IN ENTERING ANY ACTION TO CONFESS JUDGMENT, IN CAUSING SUCH WRIT OR WRITS TO BE ISSUED, OR IN CAUSING ANY JUDGMENT TO BE ENTERED, AND AGREES THAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR STRIKE OFF JUDGMENT, OR OTHER OBJECTION SHALL BE FILED OR MADE WITH RESPECT THERETO. THE GUARANTOR, BY EXECUTING THE FOLLOWING SIGNATURE LINE, ACKNOWLEDGES THAT THE GUARANTOR COMPREHENDS

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

FULLY THE EFFECT OF THIS CONFESSION OF JUDGMENT, INCLUDING THE: (A) WAIVER OF PRIOR NOTICE AND OPPORTUNITY FOR A HEARING BEFORE THE ENTRY OF A JUDGMENT OR ANY EXECUTION ISSUING ON THAT JUDGMENT, AND (B) RELEASE OF NOTEHOLDER FROM ALL ERRORS OR DEFECTS IN ENTERING ANY ACTION TO CONFESS JUDGMENT, IN CAUSING SUCH WRIT OR WRITS TO BE ISSUED, OR IN CAUSING ANY JUDGMENT TO BE ENTERED AND AGREES THAT NO WRIT OF ERROR, APPEAL, PETITION TO OPEN OR STRIKE OFF JUDGMENT, OR OTHER OBJECTION SHALL BE FILED OR MADE WITH RESPECT THERETO.


**IN WITNESS WHEREOF**, Guarantor has caused this Guaranty to be executed as of the Effective Date.

GUARANTOR:

*Thomas Colaiezzi*
_____
THOMAS J. COLAIEZZI

20

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**EXHIBIT C**
**Mortgage**

**RECORD AND RETURN TO:**

Gawthrop Greenwood, PC
ATTN: Stephen R. McDonnel, Esq.
17 E. Gay. St., Suite 100
PO Box 562
West Chester, PA 19381

(For Recorder's Use Only)

**MORTGAGE**

This Mortgage (as amended, modified or supplemented from time to time, the "Mortgage"), dated as of _____February 5_____, 2024, is made by THOMAS J. COLAIEZZI, having an address at 60 Arkansas Avenue, Ocean City, NJ 08226 ("Borrower"), in favor of RAY BARTOSZEK, having an address at 343 Greenwich Avenue, Suite 200, Greenwich, Connecticut (together with his successors and assigns, "Lender"). The Borrower and Lender are herein sometimes collectively referred to as the "Parties."

1.      **Payment of the Note**. Lender has agreed to make a loan ("Loan") to LIFEBRAND, INC., a Delaware corporation ("LifeBrand") in the original principal amount of Five Hundred Thousand Dollars ($500,000) ("Loan Amount"). In return for the Loan, LifeBrand promises to repay the Loan Amount, with interest, pursuant to the terms and conditions of that certain Promissory Note of even date herewith (as may be amended, modified or supplemented from time to time, "Note"). The Borrower is guaranteeing the obligations of LifeBrand under the Note pursuant to that certain Guaranty Agreement of even date herewith (as may be amended, modified or supplemented from time to time the "Guaranty"). The Note and Guaranty are incorporated into this Mortgage by reference and all the terms and conditions of the Note and Guaranty are made part of this Mortgage.

2.      **Grant**. In order to secure the due payment of the Loan Amount and the performance of all obligations, covenants, and agreements of Borrower under this Mortgage and the Guaranty as and when the same become due (collectively, "Secured Obligations"), whether at a stated due date, maturity date, by acceleration, or otherwise, Borrower does hereby grant, mortgage, pledge, bargain, sell, assign, transfer, release, convey, and confirm, unto Lender, with right of entry and possession as provided below, a lien and security interest in all Borrower's present and future estates, rights, title, and interests in, to, and under the following described property, now owned or held or hereafter acquired from time to time (collectively, "Property"):

21

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(a)    All that certain tract or parcel of land lying and being at 60 Arkansas Avenue, Ocean City, New Jersey 08226, Cape May County, and being more particularly described in *Exhibit A* attached hereto and incorporated herein by this reference ("Land").

(b)    All buildings, structures, and other improvements of every kind and nature whatsoever now or hereafter situated on the Land, including any additions or annexations thereto (collectively, "Improvements").

(c)    All fixtures of every kind and nature whatsoever now owned or hereafter affixed to or located on the Land or the Improvements and all replacements, substitutions, and additions to the foregoing, including, without limitation, furnaces, boilers, heating and air-conditioning systems, plumbing, water, and sewer systems, installed cabinets, and architectural features (collectively, "Fixtures").

(d)    All minerals, oil, gas, sand, gravel, timber, crops, and other natural resources that may be mined, produced, or extracted from the Land, or that may be located in, on, or under the surface of the Land (to the extent owned by Borrower).

(e)    All insurance or other settlement proceeds relating to or arising out of the foregoing, all proceeds of a sale of all or any portion of the foregoing, and all causes of action, claims, compensation, awards, damages, proceeds, payments, relief, or recoveries, including interest thereon, resulting from any casualty or condemnation of all or any part of the Land or Improvements or for any damage or injury to it or for any loss or diminution in value of the Land or Improvements.

(f)    All other rights, interests, and benefits that Borrower has, or will have, as the fee simple owner of the Property.

TO HAVE AND TO HOLD the Property and the rights, remedies, and privileges hereby granted and conveyed unto Lender, its successors and assigns, forever; PROVIDED, HOWEVER, that if Borrower and/or LifeBrand shall pay and perform each of the Secured Obligations as set forth herein, in the Guaranty and in the Note, as applicable, then, upon the satisfaction and full performance of all Secured Obligations, the estate hereby granted and conveyed shall become null and void and Lender shall cancel, release, and discharge this Mortgage at Borrower's expense.

3.    **Borrower Covenants**.

(a)    Borrower warrants and represents that it possesses good and marketable title to an indefeasible fee simple estate in the Property in accordance with N.J.S.A. 46:9-2; that Borrower has full power and lawful authority to subject the Property to the lien of this Mortgage; and that Borrower shall defend its ownership against all claims, subject to any encumbrances of record as of the date hereof.

(b)    Borrower shall promptly make all payments required by the Guaranty and this Mortgage in strict accordance with the terms set forth therein.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(c)     Borrower shall perform and comply with all the agreements, conditions, covenants, provisions, terms, and stipulations of the Guaranty and this Mortgage.

(d)     Borrower shall keep and maintain all Improvements and Fixtures now existing and hereafter erected on or attached to the Property in good order and condition and shall make, as and when necessary, all repairs and replacements to all such Improvements and Fixtures. Borrower shall not commit nor permit the commission of waste in or about the Property and shall not permit the Property and any Improvement now existing or hereafter erected to become vacant, abandoned, deserted, removed, demolished, or materially altered. Lender and any person authorized by Lender shall have the right at any time, upon reasonable notice to Borrower, to enter the Property at a reasonable hour to inspect and photograph its condition and state of repair. However, Lender and any person authorized by Lender shall have the right at any time, without notice to Borrower, to enter the Property in the event of an emergency.

(e)     Borrower shall pay when due without any deduction or abatement all liens, taxes, assessments, water and sewer rents, and all other charges or claims which may be assessed, levied, or filed at any time against Borrower or the Property. Further, Borrower shall not apply for or claim any deduction by reason of this Mortgage from the taxable value of all or any part of the Property. As also set forth in Section 19 below, it is expressly agreed that no credit shall be claimed or allowed on account of the Loan because of any taxes or other charges paid on the Property. Borrower shall provide Lender, upon request from Lender, with a copy of the paid receipt for any of the foregoing costs or charges.

(f)     Borrower shall pay for and maintain extended coverage hazard insurance covering the Property in an amount equal to at least the Loan Amount of this Mortgage. All insurance policies shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee. Borrower shall provide Lender annually, and more frequently upon request from time to time, with proof of coverage and payment of premium, including a copy of the policy declaration page, certificate of insurance, and a copy of the paid premium receipt. If requested in writing from Lender, Borrower shall pay for and maintain other types of insurance, such as flood insurance if the location of the Property shall now or hereafter be designated as in a flood zone area. Borrower shall promptly notify Lender in the event of any loss or damage at the Property. Borrower hereby further acknowledges and agrees that: (i) Lender has the right to participate in and settle any claim on Borrower's behalf; (ii) all proceeds of insurance shall be payable to Lender under a standard mortgage clause in the insurance policy; (iii) Lender has the option of using any insurance proceeds to either repair and restore the Property or to reduce the amount due under the Guaranty and this Mortgage; and (iv) in no event shall the due date for any payment under the Loan be delayed as a result of any pending insurance claim unless otherwise required by law.

(g)     Borrower shall comply with all laws, ordinances, regulations, and orders of all federal, state, municipal, and other governmental authorities relating to the use of the Property, including any federal or state environmental laws.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(h)     Borrower agrees that, upon written request of Lender at any time, Borrower shall certify the following in writing: (i) the original Loan Amount, the outstanding balance due on the Note, and the maturity date of the Loan; and (ii) the loan remains in full force and effect and is not subject to any right of offset or any defense by Borrower relating to the covenants and obligations under the Guaranty and this Mortgage.

(i)     Borrower may not rent or lease the Property without Lender's prior written consent. Borrower shall not accept rent from any permitted tenant for more than one month in advance.

4.     **Optional Escrow Payments**. Notwithstanding Borrower's payment obligations set forth in Sections 3(e) and (f), upon written notice from Lender (which notice may be sent at any time and for any reason) Borrower shall make regular monthly payments directly to Lender for the real estate taxes, assessments, property insurance premiums required under this Mortgage. Such payments shall be held by Lender in a separate non-interest-bearing escrow bank account to pay the real estate taxes, assessments, insurance premiums as they become due. At Lender's option, Lender from time to time may waive, and after any such waiver may reinstate the provisions of this paragraph requiring the monthly payments.

5.     **Condemnation**. In the event of any condemnation or taking of any part of the Property by eminent domain, or other injury to or decrease in the value of the Property by any public or quasi-public authority or corporation, all proceeds (that is, the award or agreed compensation for the damages sustained) allocable to Borrower are hereby assigned by Borrower to Lender. No settlement for damages sustained shall be made by Borrower without Lender's prior written approval. Lender is authorized and empowered (but not required) to collect and receive any such condemnation award and all condemnation proceeds which then shall be applied, in Lender's sole discretion, to the reduction of the Loan Amount owed under this Mortgage, or to be used for the purpose of repairing, restoring, or rebuilding any part of the Property. In either event, the due date for any payment under the Note, Guaranty and this Mortgage shall not be delayed unless otherwise required by law. If there is any remaining balance from the condemnation award and condemnation proceeds, the balance shall be paid to Borrower.

6.     **Payments Made for Borrower**. If Borrower fails to make any required payments or to maintain and repair the property as agreed to in this Mortgage, Lender shall have the right (but not the obligation) to make any such payments or pay for any such maintenance or repairs on Borrower's behalf. The cost of any such repairs and payments shall be added to the Loan Amount, will bear interest at the same rate provided in the Note, and shall be repaid to Lender upon demand.

7.     **Events of Default**. Lender may declare that each of the following shall constitute an event of default (hereinafter called an "Event of Default") by Borrower under the Guaranty and this Mortgage:

(a)     The failure of Borrower to pay any installment of the Loan Amount, interest, or any other sums, fees, or assessments due under the Guaranty or this Mortgage.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(b)     The failure of the Borrower to perform or comply with any of the agreements, conditions, covenants, provisions, terms, or stipulations contained in the Guaranty or this Mortgage.

(c)     The commencement of foreclosure proceedings by the holder of any lien on the Property.

(d)     If Borrower commences any proceedings under the bankruptcy code of any law of the United States or of any state laws relating to bankruptcy, insolvency, receivership, or debt relief.

(e)     Any transfer or further encumbrance of all or any part the Property, unless otherwise permitted in the Guaranty or this Mortgage.

8.     **Due on Sale or Transfer**. Lender may declare immediately due and payable all sums secured by this Mortgage upon the Sale or Transfer (hereinafter defined), without Lender's prior express written consent, which can be withheld or denied in Lender's sole discretion, of all or any part of the Property, or any interest in the Property. A "Sale or Transfer" means, but is not limited to, the conveyance of the Property or any right, title, or interest therein, whether legal, beneficial, equitable, or otherwise; whether voluntary or involuntary, whether by conveyance, transfer, outright sale, deed, installment sale contract, land contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property.

9.     **Acceleration Upon Default**. Upon the occurrence of any Event of Default, the entire unpaid balance of the Loan Amount, together with accrued interest, and all other sums then due in the Guaranty and this Mortgage, including Lender's costs of collection and reasonable attorneys' fees, shall become immediately due and payable without notice or demand.

10.     **Lender's Remedies**. Lender shall have all rights and remedies provided by law, in equity, and as set forth in this Mortgage. This includes, without limitation, the right of Lender to do one or more of the following:

(a)     Enter upon and take possession of and manage the Property, including the collection of rents and profits and the right to make such alterations, additions, improvements, renovations, repairs, and replacements to the Property as Lender may deem proper.

(b)     Have a court appoint a receiver to accept rent for the Property and pay any profits to Lender to be applied to the balance of the Loan pursuant to the terms of the Mortgage. For the purposes of this provision, Borrower consents to a court appointed receiver to accept rent for the Property in accordance with the then applicable rules of court.

(c)     Commence a foreclosure proceeding which will result in a sale of the Property, the proceeds of which shall be applied to the outstanding Loan Amount due under the Note. Guaranty and this Mortgage or commence any other action at law or in equity for the enforcement of this Mortgage.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

(d)    Commence a deficiency action for any money still owed to Lender after a foreclosure sale.

The rights, powers, and remedies of Lender granted and arising under the foregoing are separate, distinct, and cumulative of other rights, powers, and remedies granted herein or therein, and all other rights, powers, and remedies that Lender may have at law or in equity, none of which are to the exclusion of the others and all of which are cumulative to the rights, powers, and remedies provided at law for the collection of indebtedness, enforcement of rights under mortgages, and preservation of security. No act of Lender shall be construed as an election to proceed under any one provision herein or under the Guaranty, Note or this Mortgage to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

11.    **Amendments, Extensions, and Modifications**. This Mortgage and the Guaranty may not be amended, supplemented, or otherwise modified unless it is in writing and executed by both Borrower and Lender.

12.    **Severability**. If any term or provision of this Mortgage is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Mortgage or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon any determination that any term or other provision hereof is invalid, illegal, or unenforceable, Borrower and Lender shall negotiate in good faith to modify this Mortgage so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

13.    **Governing Law**. This Mortgage and any claim, controversy, dispute, or cause of action (whether in contract, equity, tort, or otherwise) based upon, arising out of, or relating to this Mortgage and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of New Jersey, without regard to principles of conflicts of law.

14.    **Successors and Assigns**. This Mortgage is legally binding upon Borrower and his successors, assigns, and all who succeed to his responsibilities (such as, by way of example, but not by limitation, heirs and executors).

15.    **Notices**. All notices and other communications relating to this Mortgage shall be in writing and shall be deemed given upon the first to occur of (a) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (b) transmittal by electronic communication (including email  or facsimile properly addressed) with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment; or (c) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the addresses for each party first set forth above, or to such other address as such party shall specify in writing.

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

16.    **No Waiver; No Course of Dealing; No Invalidity**. No failure to exercise and no delay in exercising on the part of Lender of any right, remedy, or power hereunder, or rights, remedies, and powers otherwise provided by law or available in equity, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any Event of Default or if any subsequent Event of Default occurs, nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. No act or inaction of Lender under this Mortgage shall be deemed to constitute or establish a "course of performance or dealing" that would require Lender to so act or refrain from acting in any particular manner at a later time under similar or dissimilar circumstances. Wherever possible, each provision of this Mortgage shall be interpreted in such manner as to be effective and valid to the maximum extent allowed under applicable law.

17.    **Headings**. The headings of the various articles, sections, and subsections in this Mortgage are for reference only and shall not define, expand, or limit any of the terms or provisions hereof.

18.    **Modification of Mortgage**. This Mortgage is subject to "modification" as such term is defined in N.J.S.A. 46:9-8.1, et seq. and shall be subject to the priority provisions thereof.

19.    **No Credit for Tax Paid**. Borrower waives any right it may have to a credit against interest due on the Loan Amount secured by this Mortgage pursuant to N.J.S.A. 54:4-33.

20.    **Receipt of Copy**. Borrower hereby acknowledges receipt of a true copy of this Mortgage without charge.

21.    **Spousal Consent**. Simultaneously with execution of this Mortgage, Borrower shall cause Borrower's spouse to execute and deliver to Lender a spousal consent, consenting to this Mortgage being placed on the Property, in a form reasonably satisfactory to Lender.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**IN WITNESS WHEREOF,** Borrower has caused this Mortgage to be executed on the date set forth in the acknowledgment below and to be effective as of the date first set forth above.

**BORROWER:**

*Thomas Colaiezzi*

THOMAS J. COLAIEZZI

## ACKNOWLEDGMENT

State of _____        )
                                 ) SS:
County of _____           )

I CERTIFY that on _____, 2024, THOMAS J. COLAIEZZI, personally came before me and stated to my satisfaction that each person: (a) Made the attached instrument; and (b) Executed this instrument as each person's own voluntary act.

In witness whereof, I hereunto set my hand and official seals.

_____

28

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

**EXHIBIT A**
**Legal Description**

60 ARKANSAS AVENUE, OCEAN CITY, NJ 08226

**ALL THAT CERTAIN** lot, parcel, or tract of land, situate and lying in the City of Ocean City, County of Cape May, State of New Jersey, and being more particularly described as follows:

**BEING** known and designated as Lot 103, in Block 1910, as shown on map entitled "Plan of Replotting of some of the Lots in Stoeco Riviera Tract - Plan No. 3 between West 18th Street and Sunny Harbor," owned by Stoeco Homes, Inc., dated March 24, 1954, and filed on May 7, 1954, on Map No. 494.

**BEING** further known and designated as Lot 103, in Block 1910, as shown on map entitled "Plan of a part of the Stoeco Riviera Tract in Ocean City, New Jersey, combining Plan No. 3 (Northeast of Sunny Harbor, Replotting of April 30, 1954, and Replotting of June 4, 1954)," owned by Stoeco Homes, Inc., dated October 20, 1955; un-filed.

**BEGINNING** at a point in the Southwesterly line of Arkansas Avenue, 1,641.435 feet, more or less (noted as 1,639.595 in prior deeds of record), Northwestwardly from the Northwesterly line of Bay Avenue, and in the division line between Lots 103 and 104, Block 1910, said plan; thence

(1)     In a Westwardly direction along the division line between said Lots 103 and 104, 105.37 feet to the Northeasterly line of Sunny Harbor; thence

(2)     Northwestwardly along the Northeasterly line of Sunny Harbor, 52.683 feet to the division line between Lots 102 and 103, said block and plan; thence

(3)     In an Eastwardly direction along the division line between said Lots 102 and 103, 105.37 feet to the Southwesterly line of Arkansas Avenue; thence

(4)     Southeastwardly along said Southwesterly line of Arkansas Avenue, 52.683 feet to the place of beginning.

**TOGETHER** with that portion of the subject premises located between the property line and the actual physical location of the Bulkhead as conveyed in Deed from Stoeco Development, Ltd., a Limited Partnership of the State of New Jersey, by SBS Development, Inc., a NJ Corporation, General Partner, to "Current and Future Owners as Grantees of all property located adjacent to Lagoon and other Waterfront property developed by the Grantor and/or its predecessor in title, Stoeco Homes, Inc.," recorded in Deed Book 3410,

DocuSign Envelope ID: 431A1708-2AB0-4A0C-878F-506CA4FB2896

Page 671, being further described in accordance with a description made by Design Land Surveying, P.A., as follows:

**BEGINNING** at a point in the Northeasterly line of Sunny Harbor as described hereinabove in the division line between Tax Lots 3 and 4, Block 1910, being located the following two courses from the Northwesterly line of Bay Avenue:

(a)     Along the Southwesterly line of Arkansas Avenue, in a Northwestwardly direction, a distance of 1,639.595 feet, more or less, to a point and corner common to said Lots 3 and 4; thence

(b)     Along the division line between said Lots 3 and 4, in a Southwestwardly direction, a distance of 105.37 feet to said point of beginning herein; thence

(1)     Continuing along the division line between said Lots 3 and 4, in a Southwestwardly direction, a distance of 4.94 feet, more or less, to a point in the Southwesterly face of an existing Bulkhead; thence

(2)     Along said Bulkhead Line in a general Northwestwardly direction, a distance of 53.00 feet, more or less, to a point in the line of Tax Lots 2 and 3, Block 1910; thence

(3)     Along the division line between said Lots 2 and 3, in a Northeastwardly direction, a distance of 2.6 feet, more or less, to a point in Sunny Harbor as described hereinabove; thence

(4)     Along the line of Sunny Harbor, in a Southeastwardly direction and parallel to Arkansas Avenue, a distance of 52.68 feet to the point and place of beginning.